UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**SARAH RUMAGE WHALEN, ET AL.**  **CIVIL ACTION**

**VERSUS**  **NO. 19-9334**

**MONSANTO COMPANY**  **SECTION: "H"**

## ORDER

Before the Court is Defendant Monsanto Company's Motion for Partial Summary Judgment (Doc. 60). Oral argument was held on May 25, 2023. For the following reasons, this Motion is **GRANTED.**

## BACKGROUND

This case arises out of injuries allegedly caused by Roundup, a commonly used herbicide. Defendant Monsanto Company has a plant in Luling, Louisiana that manufactures glyphosate, a chemical contained in Roundup products. Joseph P. Rumage, M.D. contracted with Defendant as an independent contractor at this plant to provide professional ophthalmological services to Defendant's employees. Dr. Rumage worked at Defendant's Luling plant for approximately twenty years and was also an avid gardener who used Roundup on a regular basis. Dr. Rumage was diagnosed with skin cancer in November 2015 and passed away as a result in April 2018.

On April 12, 2019, his children, Sarah Rumage Whalen, Joseph Paul Rumage, Jr., and William Simms Rumage ("Plaintiffs") filed this survival and wrongful death action, alleging that Dr. Rumage's exposure to and use of Roundup caused the skin cancer that ultimately lead to his death. Plaintiffs bring the following claims: dangerous design under the Louisiana Products

1

Liability Act ("LPLA"); failure to warn under the LPLA; breach of implied and express warranty under the LPLA; negligence; redhibition and toxic substances negligence.[1] Plaintiffs also request punitive damages.

Now before the Court is Defendant Monsanto Company's Motion for Partial Summary Judgment. Defendant requests that this Court dismiss Plaintiff's claims for survival, redhibition, and punitive damages. Plaintiff opposes.

## LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[2] A genuine issue of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[3]

In determining whether the movant is entitled to summary judgment, the Court views facts in the light most favorable to the non-movant and draws all reasonable inferences in his favor.[4] "If the moving party meets the initial burden of showing that there is no genuine issue of material fact, the burden shifts to the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial."[5] Summary judgment is appropriate if the non-movant "fails to make a showing sufficient to establish the existence of an element essential to that party's case."[6] "In response to a properly supported motion for summary judgment, the non-movant must

---

[1] Doc. 1.
[2] FED. R. CIV. P. 56(c).
[3] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).
[4] Coleman v. Houston Indep. Sch. Dist., 113 F.3d 528 (5th Cir. 1997).
[5] Engstrom v. First Nat'l Bank of Eagle Lake, 47 F.3d 1459, 1462 (5th Cir. 1995).
[6] Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).

identify specific evidence in the record and articulate the manner in which that evidence supports that party's claim, and such evidence must be sufficient to sustain a finding in favor of the non-movant on all issues as to which the non-movant would bear the burden of proof at trial."[7] "We do not . . . in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts."[8] Additionally, "[t]he mere argued existence of a factual dispute will not defeat an otherwise properly supported motion."[9]

## LAW AND ANALYSIS

Defendant argues that (1) Plaintiffs do not have a claim in redhibition as a matter of law; (2) Plaintiffs' survival action is prescribed; and (3) Plaintiffs may not recover punitive damages for a wrongful death claim. Plaintiffs advance various arguments in opposition. The Court will address each issue individually.[10]

 *i. Redhibition*

Defendant asserts that Plaintiffs' redhibition claim is not available following the decedent's death for three reasons: (1) survival actions are limited to damages arising out of an "offense or quasi offense," (2) a redhibition claim is only available to the purchaser of a product, and (3) the claim is prescribed.

 *a. Whether Plaintiff Can Recover General Tort Damages*

Defendant first argues that Plaintiffs cannot recover tort damages for a redhibition claim. Plaintiffs respond that "[s]ince damages for redhibition

---

[7] John v. Deep E. Tex. Reg. Narcotics Trafficking Task Force, 379 F.3d 293, 301 (5th Cir. 2004) (internal citations omitted).
[8] Badon v. R J R Nabisco, Inc., 224 F.3d 382, 394 (5th Cir. 2000) (quoting Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994)).
[9] Boudreaux v. Banctec, Inc., 366 F. Supp. 2d 425, 430 (E.D. La. 2005).
[10] Because this case rests on diversity jurisdiction, Louisiana substantive law applies to Plaintiff's claims. Nat'l Liab. & Fire Ins. Co. v. R & R Marine, Inc., 756 F.3d 825, 834 (5th Cir. 2014).

sound in tort, the claim for redhibition survives in the survival action . . . and the wrongful death action."[11]

Article 2520 of the Louisiana Civil Code provides that a defect is redhibitory if it "renders the thing useless" or renders its use "so inconvenient that it must be presumed that a buyer would not have bought the thing had he known of the defect."[12] "The remedy for breach of the warranty against redhibitory defects is rescission of the contract or reduction of the price, but if the seller knew of the defect, he may also be held liable for damages and attorney's fees."[13]

The Louisiana Products Liability Act ("LPLA") took effect on September 1, 1988 and is not retroactive.[14] Louisiana Revised Statutes § 9:2800.52 provides that the LPLA "establishes the exclusive theories of liability for manufacturers for damage caused by their products. A claimant may not recover from a manufacturer for damage caused by a product on the basis of any theory of liability that is not set forth in this Chapter."[15] Courts have repeatedly held that plaintiffs may not recover from a manufacturer for damage caused by a product on any basis not set forth in the LPLA.[16]

---

[11] Doc. 65 at 11.
[12] LA. CIV. CODE art. 2520.
[13] Hollybrook Cottonseed Processing, LLC v. Carver, Inc., No. CIV 09-0750, 2010 WL 2195685, at *2 (W.D. La. May 28, 2010) (citing LA. CIV. CODE art. 2545).
[14] Gilboy v. Am. Tobacco Co., 582 So. 2d 1263, 1264 (La. 1991) ("Since the [LPLA] alters substantive rights, it is not retroactive and does not apply to this lawsuit.").
[15] LA. REV. STAT. § 9:2800.52. *See also* Couturier v. Bard Peripheral Vascular, Inc., 548 F. Supp. 3d 596, 606 (E.D. La. 2021) ("Circumstances or conduct that will trigger liability of a manufacturer under LPLA constitute fault under La. Civ. Code art. 2315, so that the products action against the manufacturer continues to be in tort."); Jefferson v. Lead Indus. Ass'n, Inc., 106 F.3d 1245, 1249 (5th Cir. 1997) ("the Court agrees that the LPLA states the exclusive theories on which liability may be imposed on a manufacturer of a defective product");
[16] Donald v. AstraZeneca Pharms., LP, No. CV 16-17753, 2017 WL 1079186, at *1 (E.D. La. Mar. 22, 2017) ("The LPLA provides the "exclusive remedy for products liability suits" under Louisiana law.").

The LPLA specifically defines "damage" as follows: "'Damage' means all damage caused by a product, including survival and wrongful death damages, for which Civil Code Articles 2315, 2315.1 and 2315.2 allow recovery."[17] Under the LPLA's definition of "damage," the LPLA is the exclusive remedy for recovery under 2315.1 (survival) and 2315.2 (wrongful death). Pursuant to the LPLA's exclusivity provision, thus, Plaintiffs cannot obtain general tort damages for their claim in redhibition.[18] Plaintiffs may, however, still have a redhibition claim for damage to the product itself or economic loss.[19]

b. *Whether a Redhibition Claim is Heritable*

Second, Defendant argues that a rehibition claim is only available to the purchaser of a product. Plaintiff responds that Louisiana law allows consumers without privity to recover in redhibition. The Court finds that the ultimate question here is whether a claim for redhibition is heritable. While Defendant is correct that a "redhibitory action is between seller and buyer, and without such a relationship, the action cannot be maintained," neither party addresses whether a redhibitory action is transferable *mortis causa*.[20] This issue was not addressed by either party, but the Court finds that the question however, is mooted because regardless of whether a claim in redhibition is heritable, Plaintiffs' redhibition claim is prescribed.

c. *Whether the Redhibition Claim is Prescribed*

---

[17] LA. REV. STAT. § 9:2800.53(5).
[18] *Hollybrook Cottonseed Processing, LLC*, 2010 WL 2195685, at *4 (citing Aucoin v. Southern Quality Homes, LLC, 984 So. 2d 685, 691 n.8 (La. 2008) ("Redhibition claims for damage to a product itself or economic loss are the only exceptions to the LPLA's exclusivity provision.") DeAtley v. Victoria's Secret Catalogue, LLC, 876 So. 2d 112, 116 n.2 (La. Ct. App. 4 Cir. 2004) ("Damages recoverable under the LPLA include pain and suffering, medical expenses, damage to property, other than to the product itself and loss of consortium, to name a few.").
[19]*DeAtley*, 876 So. 2d at 116 n.2 (explaining that a claim in redhibition is exempted from the LPLA's exclusivity provision only to the extent the plaintiff seeks to recover the value of the product or other economic loss, which the court defined as "loss of income or profits resulting from loss of or inability to use product as intended").
[20] Duplechin v. Adams, 665 So. 2d 80, 84 (La. Ct. App. 1 Cir. 1995).

Defendant's third argument is that Plaintiffs' redhibition claim is prescribed. Plaintiffs provide no response to this argument. Louisiana Civil Code article 2534 provides that a manufacturer of a product is deemed to know of the defect and thus, Plaintiffs' redhibition claim is subject to a one-year prescriptive period from the day the defect was discovered by the buyer.[21] Generally, the party asserting prescription has the burden of proof.[22]

Here, the alleged defect is that Roundup is carcinogenic.[23] Defendant cites the testimony of Dr. Rumage's wife as evidence that Dr. Rumage, the buyer, knew of the alleged defect in 2015 or 2016. The deposition states that Dr. Rumage discussed the lawsuits against Monsanto involving Roundup in 2015 or 2016 after he learned about it in the papers.[24] Dr. Rumage's statement

---

[21] LA. CIV. CODE art. 2534(B) ("The action for redhibition against a seller who knew, or is presumed to have known, of the existence of a defect in the thing sold prescribes in one year from the day the defect was discovered by the buyer or ten years from the perfection of the contract of sale, whichever occurs first"); Bearly v. Brunswick Mercury Marine Division, No. 39-069 (La. Ct. App. 2 Cir. 2004) ("because of the manufacturer's presumed knowledge of the defect under the jurisprudential interpretation of Article 2545, [the manufacturer's] actual knowledge of the alleged defect is immaterial to [the plaintiff's] claim.").

[22] Titus v. IHOP Rest., Inc., 25 So.3d 761, 764 (La. 2009).

[23] In Plaintiffs' Complaint, they allege that "the carcinogenic characteristic of glyphosate, Roundup, and Roundup products rendered the product defective, absolutely useless, and unfit for its intended use. Doc. 1 at 58. Plaintiffs' opposition to this Motion, however, states that "Roundup contained a defect, namely arsenic." Doc. 65 at 10. Elsewhere in their opposition Plaintiffs provide that arsenic is a cancer-causing ingredient and an OSHA-regulated occupational carcinogen. The Court finds that these allegations— that Roundup contains a carcinogen, and that the particular carcinogen is arsenic — are functionally the same. The alleged defect is that Roundup contains a cancer-causing agent.

[24] *Id.* at 7. Plaintiffs argue that this testimony is inadmissible hearsay. The Court finds, however, that the statement is admissible as the statement of a party opponent. The Fifth Circuit recently held that "[u]nder Rule 801, a statement 'offered against an opposing party' that 'was made by the party in an individual . . . capacity' is not hearsay." Klocke v. Watson, No. 22-10348, 2023 WL 2823060 (5th Cir. Apr. 7, 2023) (first citing Est. of Shafer v. C.I.R., 749 F.2d 1216, 1220 (6th Cir. 1984) (statements attributed to decedent are admissible by the opposing party when the decedent's estate is a party to the action); and then citing Phillips v. Grady Cnty. Bd. of Cnty. Comm'rs, 92 F. App'x 692, 696 (10th Cir. 2004) (noting that "a decedent, 'through his estate, is a party to [an] action,' so that the decedent's statements 'are a classic example of an admission'" (alteration in original) (quoting *Shafer*, 749 F.3d at 1220)); and then citing United States v. Est. of Mathewson, 2016 WL 7409855, at \*4 (W.D. Tex. Apr. 19, 2016) ("Admissions by a decedent fall within [the party-opponent statement] exception

that he knew of the Roundup litigation indicates he was alerted that Roundup was allegedly carcinogenic. Regardless of whether Dr. Rumage was made aware of the defect in 2015 or 2016, this lawsuit was filed in April 2019, far beyond the one-year prescriptive period. Plaintiffs' redhibition claim is prescribed.

    *ii.    Statute of Limitations*

Defendant next argues that Plaintiffs' survival claim under the LPLA has prescribed. Plaintiffs' Complaint argues, however, that "all applicable statutes of limitations have . . . been tolled by Monsanto's knowing and active fraudulent concealment."[25]

Article 3492 of the Louisiana Civil Code provides that "[d]elictual actions are subject to a liberative prescription of one year."[26] This period "commences to run from the day injury or damage is sustained."[27] "Damage is considered to have been sustained, within the meaning of the article, only when it has manifested itself with sufficient certainty to support accrual of a cause of action."[28] In this case, "the survival action is derivative of the primary tort victim's action" and is "dependent on the primary tort victim having a viable cause of action on the date of his death."[29] "Consequently, if the cause of action of the primary tort victim has prescribed prior to his date of death, then there is no viable action to transfer to his statutorily-designated beneficiaries."[30]

---

when the estate is a party to the lawsuit.")). The Court finds that Dr. Rumage's statement, offered by Defendant against Plaintiffs is admissible.
[25] Doc. 1 at 32.
[26] Similarly, survival and wrongful death actions are subject to a prescriptive period of one year from the date of death. LA. CIV. CODE arts. 2315.1(A), 2315.2(B).
[27] LA. CIV. CODE art. 3492; *see also* Brown v. R.J. Reynolds Tobacco Co., 52 F.3d 524, 527 (5th Cir. 1995) (quoting LA. CIV. CODE art. 3492).
[28] Cole v. Celotex Corp., 620 So. 2d 1154, 1156 (La. 1993) (citing McCray v. N.E. Ins. Co., 579 So. 2d 1156 (La. App. 2 Cir. 1991)).
[29] Lennie v. Exxon Mobil Corp., 251 So. 3d 637, 649 (La. App. 5 Cir. 2018).
[30] *Id.*

"If the face of the petition shows that the prescriptive period has already elapsed, the plaintiff has the burden of establishing that suspension, interruption or renunciation of prescription has occurred."[31] The doctrine of *contra non valentem* "provides some grace for those plaintiffs who are unaware that their injury was caused by a tort."[32] The doctrine states that prescription begins to run when a plaintiff has "actual or constructive knowledge of facts indicating to a reasonable person that he or she is the victim of a tort."[33] This necessary knowledge is not de minimis: "There must be knowledge of the tortious act, the damage caused by the tortious act, and the causal link between the act and the damage before one can be said to have 'constructive notice' of one's cause of action."[34] Indeed, "[a] prescriptive period will begin to run even if the injured party does not have actual knowledge of facts that would entitle him to bring a suit as long as there is constructive knowledge of same."[35]

Here, the Complaint states that Dr. Rumage, the primary tort victim, was diagnosed with cancer in 2016.[36] Plaintiffs filed suit in April 2019. Thus, on the face of the Complaint, Plaintiffs' survival claim is prescribed. Plaintiffs do not dispute this but argue that the prescriptive period was suspended due to Defendant's fraud and concealment, invoking the doctrine of *contra non valentem*. Despite the word arsenic not being mentioned in Plaintiff's Complaint, it became a central issue in response to this Motion, as much of

---

[31] Hoerner v. Wesley-Jensen, 684 So. 2d 508, 510 (La. App. 4 Cir. 1996).
[32] *In re* Xarelto (Rivaroxaban) Prod. Liab. Litig., No. 15-4790, 2017 WL 4517287, at *2 (E.D. La. Oct. 10, 2017)
[33] *Id.* (quoting Bailey v. Khoury, 891 So. 2d 1268, 1276 (La. 2005)) (internal quotations omitted).
[34] Ducre v. Mine Safety Appliances, 963 F.2d 757, 760 (5th Cir. 1992) (quoting Knaps v. B & B Chem. Co., 828 F.2d 1138, 1139 (5th Cir. 1987)).
[35] Campo v. Correa, 828 So. 2d at 510 (La. 2002).
[36] Tenorio v. Exxon Mobil Corp., 170 So. 3d 269 (La. App. 5 Cir. 2018) ("Damage is considered to have been sustained on the date of diagnosis.")

Plaintiffs' briefing centers around the alleged obfuscation of the arsenic content of Roundup.[37]

Defendant responds that *contra non valentem* does not apply, as Dr. Rumage was aware of the Roundup litigation more than a year prior to his death.[38] As evidence that Dr. Rumage knew or should have known about the alleged cause of his cancer, Defendant cites the testimony of Dr. Rumage's wife. The deposition states that Dr. Rumage told his wife about the lawsuit against Monsanto involving Roundup in 2015 or 2016, and that he had no interest in suing because "the science wasn't there yet."[39] The Court finds that the testimony of Dr. Rumage's wife is sufficient to preclude the application of *contra non valentem*.

The testimony shows that Dr. Rumage was aware of the litigation involving Roundup and told his wife he had no interest in filing a claim. Based upon this deposition, it is apparent that Dr. Rumage had enough notice following his diagnosis to incite an inquiry. Plaintiffs dispute that knowledge of the Roundup litigation in general was sufficient to constitute "actual or constructive knowledge of facts" indicating to Mr. Rumage that he was the victim of a tort.[40] Plaintiffs also argue that Defendant withheld the arsenic content of Roundup from the public, precluding prescription from running. "Prescription, however, begins to run 'when there is enough notice to call for an inquiry about a claim, not when an inquiry reveals the facts or evidence that specifically outline the claim.'"[41] The Court thus holds that knowledge of a general link between cancer and Roundup was sufficient to prompt Dr.

---

[37] The Court notes that this lawsuit was filed despite Plaintiffs' having no information regarding the amount of arsenic contained in Roundup products.
[38] Doc. 60-2 at 7.
[39] *Id.* at 7.
[40] *Hoerner*, 684 So. 2d at 510.
[41] *In re* Taxotere (Docetaxel) Prod. Liab. Litig., No. 16-16635, 2020 WL 4228375, at *3 (E.D. La. July 23, 2020), *aff'd*, 860 F. App'x 886 (5th Cir. 2021).

Rumage to investigate further.[42] As Plaintiffs have failed to create an issue of fact on *contra non valentem,* the Court finds that Plaintiffs' survival claim was prescribed by the time they filed suit in April 2019.

### iii. *Punitive Damages*

Finally, Defendant argues that punitive damages are unavailable for a wrongful death claim under Louisiana law. In support of their claim for punitive damages, Plaintiffs cite to a now repealed version of Louisiana Code Article 2515.3 which provided that "exemplary damages may be awarded . . . for defendant's wanton or reckless disregard for public safety in the storage, handling, or transportation of hazardous or toxic substances."[43] The law to be applied in a wrongful death action is the law in effect at the time of the decedent's death.[44] This provision was repealed in 1996 and was not the law in effect at the time of Dr. Rumage's death.[45] Thus, the version of Louisiana Code Article 2315.3 Plaintiffs rely upon in support of punitive damages does not apply to this action.[46] Plaintiffs may not recover punitive damages for their remaining wrongful death claim.

---

[42] The Court also notes that "[t]he ultimate issue is the reasonableness of the [plaintiff's] action or inaction, in light of his education, intelligence, the severity of the symptoms, and the nature of the defendant's conduct." *Campo*, 828 So. 2d at 511. Dr. Rumage was a highly educated medical doctor, making his inaction in the face of his diagnosis unreasonable in light of his education and intelligence.

[43] Doc. 65.

[44] Pierce v. Exxon Mobil Corp., No. 12-2224, 2013 WL 1856079 (E.D. La. Apr. 30, 2013) (this version of Article 2315.3 "was enacted on September 4, 1984 and repealed on April 16, 1996").

[45] *Pierce*, 2013 WL 1856079, at *9 (citing Walls v. Am. Optical Corp., 740 So. 2d 1262, 1270 (La. 1999)) ("the law to be applied to a wrongful death action is the law in effect at the time of the decedent's death").

[46] Plaintiffs' Complaint appears to suggest that the availability of punitive damages is determined by Delaware law. Doc. 1 at 62 ("Defendant's reckless conduct warrants an award of punitive damages, including such other damages as may be allowed under Delaware law."). Plaintiffs, however, do not raise this issue in the opposition to Defendant's Motion for Summary Judgment, and only discuss Louisiana law. The Court finds that the availability of punitive damages is determined by Louisiana law under Louisiana Code of Civil Procedure Article 3545, which states that Louisiana law governs the availability of punitive damages "when the injury was sustained in this state by a person domiciled or residing in this state."

## CONCLUSION

For the foregoing reasons, Defendant's Motion for Partial Summary Judgment is **GRANTED. IT IS ORDERED** that Plaintiffs' redhibition and survival claims are **DISMISSED WITH PREJUDICE. IT IS FURTHER ORDERED** that punitive damages are not available on Plaintiff's remaining wrongful death claim.

New Orleans, Louisiana this 14th day of June, 2023.

_____
**JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT JUDGE**

---

Mr. Rumage was domiciled in Louisiana, and allegedly used Defendant's product in Louisiana. Thus, Louisiana law controls.